## STEPHENSON *v.* BROOKLYN CROSS-TOWN RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

Argued March 11, 1885.—Decided March 23, 1885.

None of the separate elements of the devices described in the patent granted September 16, 1873, to John A. O'Haire and W. A. Jones, as assignees of John A. O'Haire for an improvement in operating car doors, were new; nor was the combination new ; nor was there any patentable invention in the contrivance described in the patent.

The device described in the patent granted March 30, 1875, to appellant for an

improvement in signalling devices for street cars required no ingenuity, and cannot be called an invention.

The combination described and claimed in the patent granted September 7, 1875, to appellant for an improvement in street cars is a mere aggregation of separate devices, each performing the function for which it is adapted when used separately, and the whole contributing no new result as the product of the joint use ; and it is not a patentable invention.

John Stephenson, the appellant, was the plaintiff in the Circuit Court. He brought his bill to restrain the infringement by the Brooklyn Cross-Town Railroad Company, the appellee, of three letters patent. The first was a patent dated September 16, 1873, granted to John A. O'Haire and W. A. Jones, as assignees of John A. O'Haire, the inventor, for "an improvement in operating car doors." The second, dated March 30, 1875, was granted to the appellant "for an improvement in signalling devices for street-cars." The third, dated September 7, 1875, was also granted to the appellant for an "improvement in street-cars," consisting in placing a mirror in the hood of an ordinary street-car to enable the driver to see what was occurring in and behind the car.

The bill charged an infringement of each of these patents by the appellee in all of its cars.

The answer of the appellee denied infringement of any of the patents sued on ; averred that all had been anticipated by specified American and foreign patents and by certain persons in this country, naming them ; that none of the devices were patentable ; and that the devices described in the second and third patents were in public use and on sale for more than two years prior to the application for letters-patent therefor respectively.

Upon final hearing the Circuit Court dismissed the bill (14 Fed. Rep. 457), and the plaintiff appealed.

*Mr. Benjamin F. Thurston* and *Mr. William Allen Butler* (*Mr. Philip J. O'Reilly* was with them) for appellant.

*Mr. Francis Rawle* (*Mr. Walter George Smith* was with him) for appellee.

MR. JUSTICE WOODS, after making the foregoing statement, delivered the opinion of the court.

We shall consider each of the patents in the order above stated.

The invention described in the O'Haire patent consists of a combination and arrangement of devices by which the rear door of a street-car can be opened and closed by the driver from the front platform where he stands, in order to let passengers into or out of the car.

The drawing by which the specification is illustrated shows the frame of an ordinary street-car provided with a door which is supported upon and moves back and forth upon suitable pulleys and ways, which, it is said, may be arranged in any desired manner. Passing through the bar from which the hand-straps are suspended, and which is made hollow, is a rod or rock-shaft which has a lever or crank upon its front end within easy reach of the driver. Upon its rear end is a similar lever or crank carrying a roller, which works up and down in a rectangular guiding-frame secured to the rear edge of the door and by which the door is opened and closed. The driver, by a slight push upon the front lever, can open the door, or, by a pull toward him, can close it without moving off his seat.

The claim is as follows: "The rod $i$, crank or lever 3, and guiding-frame 6, secured to the door and combined with an operating lever for the driver, substantially as shown and described."

The infringement charged against the defendant was the use of cars containing an "improvement in operating car doors," described in the patent of George M. Brill, dated December 1, 1874. The device covered by this patent was substantially the same as that described in the O'Haire patent, except that the rock-shaft ran along the bottom of the car instead of through the bar from which the hand-straps were suspended.

There is no evidence to show that O'Haire's invention antedates the application for his patent, which was made on June 27, 1873. Considering the state of the art at that time, we are of opinion that the device covered by his patent does not embody anything new which the defendant infringes. The open-

ing and closing of the rear door of a street-car from the front platform is not new. The specification of the O'Haire patent says: "I am aware that it is not new to operate the door from the front platform of the car, as this has heretofore been accomplished by means of an endless cord which passes through the rods to which the holding-straps are secured, and I therefore disclaim such invention."

At the date of O'Haire's application it was well known, as is shown by the evidence, that doors and window-shutters guided by slides, both in vehicles and apartments, were opened and closed by mechanism used by persons placed in such situations that they could neither reach nor open and close the doors or shutters directly. The device of O'Haire must, therefore, to be the subject of a valid patent, embody some new means for accomplishing this end.

The elements of which his contrivance was made up were the rod or rock-shaft, reaching from the front to the rear of the car, the lever by which a rocking motion was given to the shaft, and the means used for communicating motion from the shaft to the door.

The testimony is conclusive to show that there is nothing new in the rock-shaft or in the lever by which it is moved. Long before the date of O'Haire's application, the evidence is clear that rock-shafts operated by a lever or crank were used to open and close the doors of furnaces, and the window and door openings of sugar-refineries, by persons standing at a distance from the windows and doors to be opened and closed. A rock-shaft moved by a lever at the end of a railway carriage for the purpose of opening and closing the sliding-doors of the carriage was described in the English letters-patent set out in the record of John Johnson, dated March 3, 1857. The use of a rock-shaft for a similar purpose, namely, the opening and closing of sliding window-blinds, is also shown in the patent of Daniel Kidder, dated June 8, 1869. Rock-shafts for the same purpose, are shown in the patent of Darwin D. Douglass, dated June 11, 1861, and the patent of W. H. Brown, dated February 23, 1864. The shaft in the Brown patent was moved by a lever, and in the Kidder and Douglass patents by a knob attached

to its end, which is the well-known equivalent of a lever. It appears, therefore, that the use of a rock-shaft actuated by a lever for communicating motion was an old device which had been in use long before the date of the O'Haire patent.

It remains to consider the mode adopted by O'Haire for communicating motion from his rock-shaft to the door of the car. We find it to be one of a number of old and well-known devices for changing rotary into horizontal or rectilinear motion. The testimony shows that the devices long used for this purpose are a pinion or segment of a pinion whose teeth interlock with the teeth of a straight bar or rack or a rigid lever attached at one end to the rock-shaft, and having on the other a pin or roller working in a slot formed on the door or shutter to be moved. Sometimes the slot is in the lever, and the pin or roller is on the door or shutter. These devices perform the same functions in substantially the same manner, and have long been recognized as mechanical equivalents.

The device covered by the patent of O'Haire, therefore, consists of a rock-shaft with a lever attached for the purpose of giving the shaft a rocking motion, combined with a well-known and long-used device by which the rocking motion was changed into a rectilinear motion and communicated to the door of a car. No one of these devices can be claimed as new.

If there is any ingenuity displayed in the contrivance described in the O'Haire patent, it must, therefore, be in the combination of these devices to attain a result. The claim of the patent is for such a combination. But in our opinion this combination was anticipated by the patents of both Douglass and Brown before mentioned.

The inventions described in these patents are for the opening and closing of outside shutters from the inside of a house without opening the windows, and they consist of a rock-shaft passing through the wall of the house, to which a rocking motion is imparted from the inside of the house in the one case by a knob, and in the other by a lever or handle on the inner end of the shaft. By means of a pinion on the outer end of the rock-shaft applied to a toothed-rack on the shutter, a rectilinear sliding motion is imparted to the shutter, which is thus

opened and closed. The rock-shafts in these patents are iden-
tical with the rod or shaft in the O'Haire patent; the lever in
the Brown patent, by which the rock-shaft is moved, is the
same as the lever in the O'Haire patent, and the knob in the
Douglass shaft is its well-known equivalent; and the contriv-
ance by pinion and rack for transmitting motion from the
rock-shaft to the shutter is the well-known and long-used equiv-
alent of the devices used for a similar purpose in the O'Haire
contrivance. We find, therefore, that none of the separate
elements of the devices described in the O'Haire patent are
new, nor is the combination new. So far, therefore, we find
no patentable invention in the contrivance described in the
patent under consideration. It was said by this court in *Smith*
v. *Nichols*, 21 Wall. 112, that "a mere carrying forward a new
or more extended application of the original thought, a change
only in form, proportions or degree, the substitution of equiva-
lents doing substantially the same thing in the same way by
substantially the same means, with better results, is not such
inventionas will sustain a patent." So in *Pennsylvania Railroad*
v. *Locomotive Truck Co.*, 110 U. S. 490, Mr. Justice Gray, deliv-
ering the opinion of the court, said: "The application of an
old process or machine to a similar or analogous subject, with
no change in the manner of application and no result substan-
tially distinct in its nature, will not sustain a patent, even if
the new form of result has not before been contemplated."
These authorities are pertinent. See also *Vinton* v. *Hamilton*,
104 U. S. 485; *Blake* v. *San Francisco*, 113 U. S. 679.

If, therefore, there is any patentable novelty in the O'Haire
contrivance, it is in the placing of the rock-shaft inside the bar
to which the hand-straps are attached. But the plaintiff's
counsel, in order to bring the device used by the defendant
within the monopoly of the O'Haire patent, insist that this is
no part of the patented contrivance, and the testimony shows
that the defendant does not use it.

We are of opinion, therefore, that, construing the patent of
O'Haire, in view of the state of the art at the date of its issue, as
we are compelled to do, in order to leave any ground whatever
on which it can be sustained, the defendant does not infringe.

We have next to consider the patent granted to the plaintiff, dated March 30, 1875, "for an improvement in signaling devices for street-cars."

The specification thus states the object of the contrivance described in the patent:

"The prevalence of street-cars managed by the driver, without the aid of a conductor, makes it necessary that every possible facility should be provided for him as well as the passengers.

"The ordinary street-car has a signal-bell located at each end, with a bell-strap attached thereto, which runs centrally along the ridge or highest part of the ceiling. This strap, as thus located, is inaccessible to many passengers.

"My improvement is intended to remedy this trouble, and consists in a new combination and arrangement with a street-car of bells or gongs and of the cords or straps which operate them, whereby passengers can, without rising from their seats, signal to the driver. This is of primary importance to invalids, ladies, and children, and that more especially when the car is crowded."

The device covered by the patent consists of the placing of two bells attached to the rafters of the bonnet or hood of the driver's platform, one at each corner of the front end of the car. To the hammer of each bell is attached one end of a bell-cord, the other end of which is attached to the inner side of the rear wall of the car, the cords being led along the lower margin of the ceiling, one on each side the car, from which bell-pulls or hand-straps are suspended at intervals within easy reach of the seated passengers, so that they, without rising from their seats, can ring the bell.

The claim was as follows: "In a street-car, two bell-cords, each provided with a system of pull-straps, and arranged in such manner as to pass along the lower margin of the roof on the opposite sides of the car and connect directly with a signal-bell or gong attached to the outside of the driver's end of the car, substantially as and for the purposes set forth."

We are of opinion that there is no patentable invention described in this patent. Bell-straps or cords running from one

end of an omnibus or street-car to the other, under the middle of the ceiling, were well known and in common use years before the application of Stephenson for his patent. The fact that they were so placed and used is mentioned in the specification. The evidence also establishes the fact, that before the year 1870 it was a common practice to attach pendent bell-pulls or hand-straps to this central cord so as to bring it within easier reach of the passsengers. The evidence shows that many of the cars in which such hand-straps or bell-pulls were used were built and sold in New York. The use of such pendent hand-straps long before the application of Stephenson for the patent now under consideration is conclusively proven.

It is also shown by the evidence that as early as the year 1861 a bell-cord or strap running along the sides of the cars above the heads of the passengers was publicly used on street-cars in Boston and Philadelphia, and the same arrangement of the cord or strap was shown in the patent of Charles Carr, issued July 5, 1870. When, therefore, the patent of Stephenson for his improvement in signaling-devices for street-cars was applied for in March, 1875, the only advance in the art which his specification showed was the applying to the cords running along the sides of the cars of the bell-pulls or hand-straps which had before then been attached to the cord running over the middle of the aisle. This, in our judgment, did not require the least degree of ingenuity, and cannot be called invention. *Hotchkiss* v. *Greenwood,* 11 How. 248; *Stimpson* v. *Woodman,* 10 Wall. 117; *Atlantic Works* v. *Brady,* 107 U. S. 192; *Slawson* v. *Grand Street Railroad Co.,* 107 U. S. 649; *King* v. *Gallun,* 109 U. S. 99; *Phillips* v. *Detroit,* 111 U. S. 604. The patent, therefore, by which the plaintiff seeks to embrace in his monopoly such an arrangement of the signal-cords and hand-straps of a street-car is void.

The third patent, which the plaintiff avers is infringed by the defendant, is for the improvement in street-cars granted to John Stephenson, the appellant, September 7, 1875, on an application dated August 7, 1874. It is thus described in the specification :

"In running street-cars it has been found to be a serious

source of trouble to have the driver continually turning round to ascertain when it is necessary to stop to permit passengers to enter or leave the car, as such constantly takes away his attention from his horses, and that frequently when it is most required. To obviate this trouble is the object of my present improvement.

"My invention, for this purpose, consists in combining a mirror with the front hood of the car, it being so arranged in connection therewith, and with an opening in the front end of the car, as to give to the driver a clear view of the inside of the car and through the entrance-door of the latter, and that without the necessity of his having to turn around for such purpose, thereby enabling him, without withdrawing his attention from the horses, to see when it is necessary to stop, either to receive a passenger or to allow one to get out. . . .

"This mirror is set at a small angle to a horizontal plane, so that its upper edge will project rearwardly beyond its lower edge, it being placed at such angle as will enable it, through the opening F in the front end of the car, to give the best view of the interior of the car and through the glass windows of the entrance-door A."

The claim was as follows: "The combination of a bonnet E provided with a mirror $b$, with an opening, or an opening covered by a transparent medium F, in the front end of a street-car, substantially as and for the purposes set forth."

A combination is patentable only when the several elements of which it is composed produce by their joint action a new and useful result, or an old result, in a cheaper or otherwise more advantageous way.

The elements of which the combination described in this patent is composed were all old and well known. They were a mirror, the hood of a street-car over the driver's platform, and a glass panel in the front end of the car over the door. We are of opinion that the alleged combination of these three elements, as described in this patent, is not patentable. There is, in fact, no combination, but a mere aggregation of separate devices, each of which performs the function for which, when used separately, it was adapted, and does not contribute to any

new result, the product of their joint use.    The result attained is merely the reflection of an object in a mirror.    The hood and the glass panel in the end of the car do not change in any degree the function of the mirror.    It is used as a mirror only. The function of the hood is not changed by the mirror or glass panel, or both.    It is a hood only on which, as in the wall of a room, the mirror is hung.    The use of a glass, instead of a wooden panel, in the front end of the car, simply removes an opaque obstacle between the mirror and the object to be reflected by it.    Neither one of the three elements of the alleged combination performs any new office or imparts any new power to the others, and, combined, they do not produce any new result or any old result more cheaply or otherwise more advantageously.    There is, therefore, no patentable combination.

This conclusion is illustrated and confirmed by the following cases: *Hailes* v. *Van Wormer*, 20 Wall. 353 ; *Reckendorfer* v. *Faber*, 92 U. S. 347 ; *Pickering* v. *McCullough*, 104 U. S. 310.

It results from the views we have expressed that the decree of the Circuit Court dismissing the bill was right.    It is, therefore,
                                                            *Affirmed.*