**KRANTZ MFG. CO., Inc., v. METROPOLITAN ELECTRIC MFG. CO.**

(District Court, E. D. New York. June 21, 1922.)

Patents ⊂⊃328—805,650, for panel board, valid and infringed.

The Krantz patent, No. 805,650, for a panel board, *held* valid, and claims 1, 2, and 5 infringed.

In Equity. Suit by the Krantz Manufacturing Company, Inc., against the Metropolitan Electric Manufacturing Company. Decree for complainant.

Kerr, Page, Cooper & Hayward, of New York City (D. W. Cooper and Thomas J. Byrne, both of New York City, of counsel), for plaintiff.

C. P. Goepel, of New York City, for defendant.

CHATFIELD, District Judge. This is an action for alleged infringement of patent No. 805,650, issued to Hubert Krantz, upon the 28th day of November, 1905. The patent says that the "invention

relates to panel boards that are arranged with plug fuses, and has for its object to improve the construction thereof."

An application was filed for this patent December 29, 1904, and in spite of the rapid advances in all matters connected with the electrical art, the ideas shown in this patent are still of commercial importance, as the use of fuse plugs or fusible connections, to be inserted in a threaded socket, as well as panel boards of the general type described in this invention, are the prevailing forms of construction at the present time. When the application was filed, the prior art showed plain recognition of various attempts to secure convenience and concentration of arrangement, in order to get away from the old type of throw switch, which required a large surface for the arrangement of the different circuits, and additional attachments for the insertion of each fuse.

Whenever a circuit is to be led off from the main conductor or feed bar, it is desirable to bring back the return wire to an adjoining connection, in order, in the case of a throw switch, to make the connections in both wires by the movement of one switch block or lever. Where screw fuse plugs are used, it is convenient and desirable to have the two plugs of the same circuit arranged not only in a pair, as distinguished from the pair of any other circuit, but to have both fuses of each pair upon the same side of the panel, so that the outgoing and incoming wire may be placed side by side, without crossing or going around the panel board. These ideas had been worked out particularly in connection with the throw switch, and there was nothing new or novel in substituting threaded fuse plugs for the two portions of the single switch block of the old designs shown in Klein (No. 636,905).

Krantz himself, in an earlier patent (No. 705,850, of July 29, 1902), brought the two connections upon the same side of the panel board, by carrying one of his connecting bars across the panel board from one member of the feed circuit, but out of electrical connection with the member of the feeder circuit which was nearest to the place for inserting a fuse.

In the patent in suit he seems to consider as old, and not needing description, the idea of bringing his crossbars across the panel board, under the feeder bar on the opposite side. The same idea of carrying a connecting wire from the feeder bar across the panel board, under and out of connection with the other feed bar, is shown in the Hundhausen patent, No. 654,310, and the Sargent patent, No. 712,-600, as well as in the older patents of the throw switch type; but Krantz decidedly reduced the size of his panel, while he obtained the desired feature of having each pair of wires on the same side of the board, and each wire adjacent to the other, by locating the receptacles for the threaded fuse plugs immediately over and mechanically attached to the particular point upon the crossbar or bus bar, where connection with that bar was to be made for the wire of the circuit which was to be led off or brought back and the particular point upon the opposite bus bar where contact was to be avoided.

The specifications and drawings show a continuation of the shell

282 F.—19

or structure making up the receptacle for the threaded fuse plug, so as to surround and rest upon the bus bar with which the wire was to be connected, or, on the opposite side, the bus bar from which a fuse plug was separated by insulation; but the location and rigid insulated connection is the point of the disclosure and claims, rather than the use of the skirt of the receptacle as an element of the fixture.

The claims of the Krantz patent upon which suit is brought are as follows:

"1. In a panel board, the combination of bus bars, and crossbars between the bus bars, with fuse plug receptacles mounted upon said bus bars, and each having a branch line contact piece, one of said contact pieces adapted to be electrically connected to the bus bar beneath its receptacle by a fuse plug, and another adapted to be electrically connected to a crossbar by a fuse plug, but insulated from the bus bar beneath its receptacle.

"2. In a panel board, the combination of bus bars and fuse plug receptacles mounted thereon, with a crossbar connected to one of said bus bars and passing into a receptacle on the opposite bus bar.

"3. In a panel board, the combination of bus bars and fuse plug receptacles mounted thereon, with a crossbar connected to one of said bus bars and passing into a receptacle on the opposite bus bar, and branch line contact pieces adapted to be connected, within the receptacles, by fuse plugs, one to the bus bar beneath its corresponding receptacle and one to the crossbar entering its receptacle."

"5. In a panel board, the combination of bus bars and fuse plug receptacles mounted thereover, with a crossbar connected to one of said bus bars and passing into a receptacle on the opposite bus bar, but out of contact with said bus bar, and a branch line contact piece entering said receptacle from the opposite side thereof and adapted to be put into connection with the crossbar, but insulated from the bus bar."

In practice the plaintiff (which is the assignee of the Krantz patent) has modified the structure and has licensed its production and sale upon the market, but has not manufactured itself. It does not make the structure of the fuse plug passing over and around the second bus bar integral with the insulating shell for the reception of the fuse plug. Nor does the defendant use a receptacle with opening in the shell. It connects the shell of the fuse plug receptacle electrically with the feed wire and with the panel back by a rigid bar or support, and does not make the shell of one piece. It does not use any material substance as described in Krantz's specifications, for the purpose of insulation, but, as the plaintiff does in practice, secures insulation by an air space or separation of the second bus bar, without the insertion of insulating material into the space. The defendant does not use the single screw going through the shell into the bus bar for contact, but does use a mechanical equivalent.

The patentee does not, however, either in the specifications or the claims, limit himself to the construction where the crossbar passes within, or terminates within, the outer shell of the fuse plug, and where the screw holding the shell forms the contact. The outer shell of the fuse plug in the drawing of the patent is placed so as to physically surround the crossbar. But a structure where the shell would straddle and be in contact with the crossbar or bus bar only if extended, and where the receptacle is held in place by an equivalent construction is plainly shown.

Claim 3 is limited to the particular construction to which the defendant seeks to limit the entire patent of the plaintiff. But a shell or receptacle which is rigidly fixed in the same position as would be an elongated shell which actually enveloped the crossbar, or a construction in which, as in the defendant's device, a rigid supporting member passes from within the shell to the crossbar, making the electrical connection as continuous as it would be if the crossbar entered the shell, is, for the purposes of the patent, an equivalent, and infringes the other claims in suit.

Nor does the defendant escape infringement by avoiding the use of a part of the porcelain shell or other tangible substance to effect insulation. There is no claim in the plaintiff's patent that the insulation must be solid, and an air space is so old in the art, for the purpose of insulation, that the defendant cannot escape infringement by leaving out tangible material and using air. In fact, the plaintiff's licensees use the air space, and the taking out of the tangible material shows no invention over the patent in suit. Economy of material alone is not invention.

The defendant contends that the plaintiff not only has never manufactured the devices of the patent in suit, but that the structure is of no utility, and has not been followed by the plaintiff or its licensees in the form placed upon the market. The deviations from the form of device shown in the patent are described above, and there is no merit to this contention.

The principal defense urged against the action comes down to a charge of invalidity. The defendant contends that the plaintiff invented nothing over the prior art, and that a mere improvement in arrangement, showing no appreciation of mechanical change or difference in function of the parts described, cannot rise to the dignity of invention and be a proper basis for a patent, even though the saving of material and a convenience of arrangement may be sufficient to attract business commercially to the device in question. Hendy v. Miners' Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207; Thompson v. Boisselier, 114 U. S. 1, 5 Sup. Ct. 1042, 29 L. Ed. 76; Stephenson v. Brooklyn Cross-Town Rd. Co., 114 U. S. 149, 5 Sup. Ct. 777, 29 L. Ed. 58.

As has been said, it was old in the art to locate fuse plugs either over or upon the bus bars, where there was a convenient place for making contact. It was old in the art to carry a crossbar or connecting wire above or below a bus bar, in order to bring the positive and negative contacts upon the same side of the panel board. The defendant therefore contends that Krantz has shown no invention in arranging in one device positive and negative connections upon the same side of the panel board, in conjunction with contacts, immediately over or upon the bus bars, thereby producing a narrower panel board, using less metal in making the circuits, with a symmetrical and compact arrangement.

The file wrapper in the case shows that the Patent Office refused to allow a patent merely for arranging the contact plugs over the bus bars, as a separate feature. It also refused to allow a claim for a

device using plug fuses in contact with the crossbars, or for the precise form of receptacle for the fuse plug described. But the combination of the two—that is, a device in which two parallel rows of receptacles are arranged, so that the positive and negative wires of each set of contacts are adjoining and lead out immediately without the use of excess material, from the pair of fuse plugs or receptacles so shaped as to carry out that purpose—accomplished economy, gave a useful and convenient arrangement, and showed mechanical ingenuity.

This patent certainly shows a mechanical improvement over the Klein design patent, No. 29,154, in which Klein first sought to protect his idea of mounting the fuse plugs over or upon the bus bars by the use of a receptacle which rigidly attached the receptacle to the plate in the panel board. It shows mechanical improvement over Hundhausen, No. 654,310, who economized in the material used in the panel board, but did not have the convenient arrangement of crossbars and the same rigidity or stability of safe construction shown by the patent in suit.

The defendant claims that in practice the plaintiff and its licensees, as well as the defendant, use a third or neutral feed bar, which carries no fuse plug receptacles, but which does carry current to or from the crossbars, when two generators are in use with an unequal load. But no change in construction is shown thereby. If three bars are used, so as to obtain an increased voltage, the only change is a mechanical one of construction, and the validity of the patent is not affected. Claim 5 expressly states that the fuse plug receptacle is to be located above the bus bar. This answers the defendant's contention that Krantz intended to limit his construction to a receptacle physically in contact with, but insulated from, the bus bar itself, and there is nothing in the file wrapper to indicate that Krantz is now seeking to hold valid that which he surrendered, or from which he limited himself, when the matter was in the Patent Office. The defendant has arranged a receptacle which can be interchanged from one bus bar to the other, while the plaintiff makes no point of this, and uses in his drawings two styles of receptacle, one for the fuse plug of the outgoing, and one for the fuse plug of the returning, wire. But this does not dispose of the question of infringement.

Claims 1 and 2 themselves sufficiently describe a structure, which might be in two parts, with the crossbar passing under the receptacle, instead of through the skirt, and where the receptacle is supported by a rigid or metallic member, not actually in contact with either bus bar, but electrically in contact with the one desired. The evident purpose and meaning of the language is to support the receptacle directly and rigidly above the bus bar, and not to support it *by* the bus bar, as a limitation of the language of the claim, but while so doing to conveniently arrange the electrical contacts desired.

There seems to be no reason, therefore, why the patent should be held invalid, either because of the disclosure of the prior art or because it shows a simple mechanical arrangement, which works out economy and has proven attractive commercially. This is not a patent where mere commercial use of itself proves invention. But com-

mercial availability and success in a way which, though simple, was not thought of in the prior art, do show that the device effected an improvement, and, if that improvement contains the element of invention, the patent should be held valid.

The plaintiff may have a decree as to claims 1, 2, and 5.