**BURMAN v. LARKEY et al.**

**No. 2921.**

District Court, D. Minnesota, Third Division.

March 30, 1938.

Merchant & Merchant, of Minneapolis, Minn., for plaintiff.

John E. Stryker, Jr., of St. Paul, Minn., for defendants.

SULLIVAN, District Judge.

This is the usual patent suit, brought by Olof S. Burman against the defendants, Martin Larkey and John Larkey, for infringement of letters patent No. 1,949,353, issued to the plaintiff on February 27, 1934, on his application filed January 30, 1933.

The patent in suit relates to laundry tubs molded from cementitious material, and its claimed object is stated to be "the provision of a soap tray molded as an integral part thereof."

The plaintiff has eleven licensees operating in as many factories, including many of the leading tub manufacturers of the United States.

The defendants, for some short period of time prior to January 30, 1933, were employed by a company engaged in the laundry tub manufacturing business at Minneapolis, Minn. The plaintiff was interested in such company as a large stockholder. The defendants have, during the past year or so, been engaged in operating a small shop in which they manufacture the laundry tub which the plaintiff claims infringes the patent under consideration.

The defendants contend (a) that the patent in suit is invalid for aggregation and for lack of invention over the prior art; (b) that the patent is invalid because its subject matter was originated by the defendants, and not the plaintiff; (c) that

there is no evidence that the patent is owned by the plaintiff but that the evidence rather proves that the defendants have a continuing interest therein; (d) that claim 3 of the patent is not infringed.

■ 1. As to the contentions of the defendants designated as (b) and (c), little is to be said. There is testimony in the case to the effect that the defendants were in the employment of a company in which the plaintiff was the principal stockholder up and to approximately the time of the claimed invention. There is some evidence on the part of defendants tending to prove that they originated the type of soap tray disclosed in the patent, but this evidence is not convincing. This testimony is contradicted directly by the plaintiff, and other evidence in the case proves to the satisfaction of the court that the defendants have no title or interest in and to the patent.

2. The sole question in the case is as to whether or not the patent is valid. If the patent is valid, there is no question but what the defendants have infringed the same. The tub manufactured by the defendants is substantially the same type of tub in structure, detail, and design as that manufactured by the plaintiff.

Of the prior art patents, the attention of the court has been called, among others, to:

The British patent to Adams, No. 203, dated January 3, 1906, which shows a longitudinally dished soap tray formed integrally with a sink, and having a drain passage for delivery into the sink, the rear wall of the sink being of much greater thickness than that of the front wall. By reason of the construction of the soap tray, the weight of the sink is increased to a substantial extent.

The Hagaman patent, No. 1,462,573, contemplates a soap tray with a rubbing surface extending from the bottom of the tray inwardly, and thereby furnishing the rubbing surface.

The Fradl patent, No. 1,854,987, covers a detachable soap tray, the soap tray being no part of the tub itself.

■ The Burman patent incorporates the old laundry tub and a new type of soap tray in one article. It is more than a combination of old elements, and it does not constitute aggregation in the true meaning. If it were a combination or an aggregation of old elements involving no new co-operative function and producing no new result, it would not constitute invention. Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719; Pickering v. McCullough, 104 U.S. 310, 26 L.Ed. 749; Stephenson v. Brooklyn Crosstown R. R. Co., 114 U.S. 149, 5 S.Ct. 777, 29 L.Ed. 58; Grinnell Washing Machine Co. v. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196.

■ Judge McDermott of the Circuit Court of Appeals, Tenth Circuit, in the case of Skinner Bros. Belting Company v. Oil Well Improvements Company, 54 F.2d 896, on page 898, speaking for the court, states the test of aggregation to be as follows: "The test is whether the combination discloses a co-operation or a co-ordination of the elements which, working together as a unit, although mayhap not simultaneously, produces a new or better result."

■ Neither does the production of a new device by the rearrangement or manipulation of known elements through the application of ordinary mechanical skill constitute invention. Lyman Gun Sight Corporation v. Redfield Gun Sight Corporation, 10 Cir., 87 F.2d 26, 28.

■ However, a new mode of operating, or a new composition to produce better results, is the daily ground for a patent. All which the act of Congress requires is that the invention be for "any new and useful [improvement on any] art, machine, manufacture, or composition of matter." Section 31, title 35 U.S.C.A.

In Consolidated Safety Valve Company v. Crosby Steam Gauge & Valve Company, 113 U.S. 157, 179, 5 S.Ct. 513, 525, 28 L.Ed. 939, the court states: "Richardson's invention brought to success what prior inventors had essayed and partly accomplished. He used some things which had been used before, but he added just that which was necessary to make the whole a practically valuable and economical apparatus."

■ The authorities are in accord that, while both novelty and utility are essential to a valid patent, they are not in themselves sufficient. A further element is necessary—there must be evidence indicating an invention of something new, and, if this element is absent, there can be no valid patent.

The novelty of the discovery set out in the patent in suit rests upon the fact that the soap tray is molded as an integral part of the tub, that it projects "upwardly and outwardly from said rear wall to support and strengthen said portion, and leaving a clear space under said portion along the

major extent of said rear wall." This is a new and useful type of construction of a soap tray. The prior art does not disclose a soap tray and tub combined, similar in any respect to the one in suit. This type of soap tray does not increase the thickness of the rear wall, as was done in the Adams patent. The rear wall is of the same weight and thickness as the front wall. The soap tray is an integral part of the tub, molded as such. This is not true of the Fradl patent, nor does the Hagaman patent cover in any respect the detail of the Burman patent. The detail of the soap tray and tub molded integrally, while both novel and useful, in addition indicates what has been termed in some of the authorities "the spark of invention." No one had ever thought of the precise detail set out in the Burman patent before. Another novelty in the construction of the tub described in the Burman patent is the detail, "a continuous metallic reinforcing element embracing and secured to the upper edge of the end walls of the tub and tray portion, and serving to strengthen and support the integral tray portion from the tub." A metallic strip over the upper edge of laundry tubs has long been known to the art. The function of the strip was to serve as a protection to the upper edges of the tub against possible chipping, but in the Burman patent this metallic stripping serves an additional purpose. The flanges, or sides of the strip, come down over the side of the upper edge of the tub and tray, and are curved inwardly and imbedded in the cementitious material when the same is molded or poured in the form. This detail gives the upper surface of the tub and tray strength, and, in addition, acts as a support for the tray. This detail is novel, useful, and also proves invention, and is not disclosed in any of the prior art patents.

Irrespective of whether or not the Burman patent be made of metal or cementitious material, the novelty and usefulness of its construction is in the fact that the weight of the tub is greatly reduced by reason of the equal thickness and weight of the rear and front walls. This detail, of course, inures to convenience and economy in construction, and resulting economy to customers in the purchase and handling of the Burman tubs. These details are ample to sustain the validity of the patent.

In Davis Mfg. Co. v. Levin Bros., 8 Cir., 8 F.2d 972, on page 974, Judge Van Valkenburgh, speaking for the court stated: "In view, therefore, of the artistic effect obtained, the resulting desirability and salability achieved, the commercial value added, and the presumption attending the issue of the patent, we concur in the judgment of the trial court that the patent should be sustained."

In Bates v. Coe, 98 U.S. 31, on page 48, 25 L.Ed. 68, it is stated: "Where the thing patented is an entirety, consisting of a single device or combination of old elements, incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire thing is found in one prior patent or printed publication or machine, and another part in another prior exhibit, and still another part in a third one, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement."

In Imhaeuser v. Buerk, 101 U.S. 647, 655, 656, 25 L.Ed. 945, it is stated: "Equivalents may be claimed by a patentee of an invention consisting of a combination of old elements or ingredients, as well as of any other valid patented improvement, provided the arrangement of the parts composing the invention is new, and will produce a new and useful result."

The patent in suit was granted only after the Patent Office had before it all of the prior patents which have been called to the attention of the court, and thereby a strong presumption of the validity of the Burman patent is created. Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Thacher v. Mayor, etc., of Baltimore, D.C., 219 F. 909, 911.

It is contended by the defendants that no great amount of study was devoted by Burman in the matter of his patent, but the authorities say that some valuable discoveries are accidental rather than the result of much ingenuity or long experimentation, and some discoveries are made without the exercise of great skill and without the advantage of long experience, and that these discoveries ·in themselves are both novel and useful, and are accordingly entitled to protection by patent. See Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683.

"The law has no regard to the process of mind by which the invention was accomplished, whether the discovery be by ac-

cident or by long and laborious thought." 2 Kent, Com. 371; Crane v. Price, 1 Webs. Pat. Cas. 411.

Where there is some doubt in the mind of the court as to the validity of the patent, the commercial success of the patent should be taken into consideration, and, while commercial success is not the sole criterion of invention, it is such a criterion as should be given proper consideration in arriving at a determination of the validity of the patent. C. & A. Potts & Co. v. Creager, 155 U.S. 597, 609, 15 S.Ct. 194, 39 L.Ed. 275; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 497, 23 L.Ed. 952; Magowan v. New York Belting Co., 141 U.S. 332, 12 S.Ct. 71, 35 L.Ed. 781.

The products manufactured under the Burman patent have been in demand. Burman has eleven licensees operating in fourteen factories, these licensees being important manufacturers of laundry tubs in many locations from Philadelphia to the Rocky Mountains. Three licensees testified in this case that their sales of the Burman tub ran from 60 per cent. to 80 per cent. of the total number of tubs manufactured and sold by them. This testimony proves that there is a market for the Burman tub, and that the public generally desiring laundry tubs has at least to the extent of 60 per cent. to 80 per cent. purchased Burman tubs from those dealers having for sale the Burman tub and other types of laundry tubs.

The patent to plaintiff is valid, and the evidence discloses that this patent has been infringed by the defendants, and a decree in favor of the plaintiff may be entered.