STIRRAT et al. v. EXCELSIOR MANUF'G CO.

(Circuit Court, E. D. Missouri, E. D. January 20, 1893.)

No. 3,255.

PATENTS—LIMITATION OF CLAIMS—IMPROVEMENTS IN STOVES.

The Stirrat patent, No. 357,874, for an improvement in stoves, must, in view of the prior state of the art, and of the modifications of the claims in the patent office, be strictly limited to the construction described, which includes as one essential element a removable top plate, or long center, cast hollow, or with a projection having a water passage through it. The patent therefore does not cover the idea of bolting a water pipe or water box to the long center for the purpose of cooling it, and giving it greater durability.

Suit in Equity by Robert J. Stirrat and others against the Excelsior Manufacturing Company for infringement of a patent.

Fowler & Fowler, for complainants.
Paul Bakewell, for defendant.

THAYER, District Judge. The file wrapper and contents of letters patent No. 357,874 show that when the application was filed the patentee (Robert J. Stirrat) supposed himself to be the inventor of the hollow long center for stoves and ranges. His sole claim was for "the long center of a stove or range, formed with a water passage or passages therein, communicating with induction and eduction pipes, substantially as and for the purpose set forth;" and in his specification he stated that his improvement consisted "in forming a water passage in the long center or cen-

ters, connected with the water tank by suitable pipes;" and that the main purpose of thus casting the top plate or long center was to protect it from the action of heat, and to prevent it from becoming warped. In the first communication from the patent office the patentee was advised that the supposed new method of molding and using the long center of a stove as a water pipe, to render it more durable, was not new; that both the top plates and long centers of stoves and ranges had previously been molded with water channels, for the express purpose of distributing the heat, and preventing them from becoming warped. Vide U. S. letters patent No. 277,009, lines 40 to 45, inclusive. It would seem as though this first communication from the patent office ought to have satisfied the patentee that his claims as an inventor rested upon a doubtful foundation, and that very little scope could be given to any claim which he might eventually succeed in having allowed. Other inventors had already suggested the idea of casting the top plates of a stove hollow, and of permitting water to circulate therein, for the purpose of protecting the plates, in a measure, from the destructive action of heat. But, as usually happens in such cases, the patentee persisted in his efforts to obtain a patent on something, although his main idea had been anticipated. Having modified his specification by the additional statement that his invention related "to those water-heating devices in which the water to be heated is caused to pass through the long center and a water-back," and that his improvement consisted "in features of construction" merely, he subsequently laid claim to "a combined long center and water-back consisting of a top plate, C, having the chamber C', horizontal pipe section, F', F'', eduction pipe, G, and induction pipe, F, substantially as set forth." This claim was likewise rejected, as containing nothing substantially new; but eventually, and after further changes in the specification, a patent was granted, containing three claims, of which the first claim may be taken as a fair sample. It is as follows:

"The combination, with the removable top plate of a cooking stove having a chamber therein, of an exit pipe leading from said chamber at one end of the plate, and an inlet pipe running parallel to the exit pipe, extending to the other end of the plate, and communicating with the chamber, substantially as described."

Before the issue, however, the descriptive part of the specification had been amended so as to state specifically that "the long center, C, is cast with a projection having a water passage through it almost from end to end."

The court has been thus particular in stating some of the proceedings in the patent office for the purpose of saying that, in view thereof, the complainants must expect a strict construction of the claims of their patent; and for the further purpose of showing that throughout those proceedings the patentee constantly described the long center as a hollow casting, which had been so made for the express purpose of carrying water therein, and resisting the action of heat. When the application for the patent was filed, the patentee evidently believed that his invention consisted in casting

the long center of a stove hollow, so that it might be used as a water pipe or water channel. This was what he first claimed, and all that he claimed. Before the date of his application it had long been the practice to heat water in stoves and ranges by conducting a water pipe into the fire box of a stove or range, and bending it somewhat into the form of an oxbow. The only change which Stirrat suggested in existing and well-known devices for heating water in stoves was the use of the long center of a stove as a water channel in lieu of the upper leg of the old oxbow pipe; and that this was the view entertained by the patent office is evident from the references given, and the correspondence that took place during the pendency of the application.

Under all of the circumstances, the court is of the opinion that the combination covered by Stirrat's patent must be limited very strictly to a combination of such parts as his specification describes, and that one of the essential parts of the combination is a removable top plate, or long center, cast hollow, or with a projection having a water passage through it. The margin of invention is very small when viewed in connection with the state of the art at the time the Stirrat patent was issued. The patent office in all probability acted upon the assumption that a long center, cast hollow, was an essential feature of Stirrat's invention, as otherwise the subsequent patent to O'Keefe & Filley, No. 358,123, for a water box bolted to the under side of the long center, would not have been granted. But, whether such was or was not the view entertained by the patent office, the court is of the opinion that such is the correct view. The specification describes the long center as being "cast with a projection having a water passage through it," and there is no suggestion in the specification that the object which the inventor hoped to accomplish in the way of preventing the long center from warping could be accomplished by other equivalent means, as by bolting a water pipe thereto, for the purpose of cooling and supporting it.

In conclusion it is only necessary to say that it is only by limiting the Stirrat patent to the precise form of device shown in the specification that the patent can be sustained as a valid grant in view of the prior state of the art. The long center, cast hollow, simply takes the place of one of the two water pipes which were formerly in use. Whatever advantage there may be in that precise mode of construction must be conceded to the complainants, but their patent cannot be so construed as to cover the idea of bolting a water pipe, or a water box to the long center for the purpose of cooling it and giving it greater durability. The court holds, therefore, that defendants have not infringed complainants' letters patent, and the bill is accordingly dismissed.