SAMPSON v. DONALDSON et al.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1895.)

No. 620.

PATENTS—INVENTION—VALVE-RESEATING TOOL.

The Wright patent, No. 400,989, for improvements in valve-reseating tools, in which the only change from previous devices was in substituting for a disk-shaped file, with a continuous cutting surface, a file having a broken or interrupted surface, which enables it to clear itself of the filings, so as to prevent clogging or "chattering," is void for want of invention.

Appeal from the Circuit Court of the United States for the District of Minnesota.

This was a suit in equity by Clara E. Sampson against William Donaldson, Lawrence S. Donaldson, and William S. White, copartners as William Donaldson & Co., for alleged infringement of a patent relating to valve-reseating tools. The circuit court dismissed the bill (62 Fed. 275), and complainant appeals.

P. H. Gunckel, for appellant.

A. C. Paul (C. G. Hawley, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree dismissing a bill brought for the infringement of the first claim of letters patent No. 400,989, issued April 9, 1889, to Pliny J. Wright, assignor of one-half to Clara E. Sampson, for improvements in a valve-reseating tool. The claim that the bill alleges was infringed by the appellees is:

"(1) In a valve-reseating device, the combination, with a revoluble shaft, of a file connected to the lower end of said shaft at right angles to its axis, of a size to cover at any one time only a part of the surface to be dressed, whereby the file is rendered self-clearing, substantially as described."

In the specification the inventor says:

"My invention relates to valve seat dressing tools, and is in the nature of an improvement on the construction shown in the patent granted to myself and Samuel Rust, of date May 29, 1883, under No. 278,478. In my former patent I used a disk-shaped cutter on the end of a revoluble tool shaft, and a guide below the tool, adapted to fit the opening in the valve seat for the purpose of centering the cutter. In practice, however, I found that this construction was imperfect. I found that the guide in the valve-seat opening could not be relied on to hold the tool shaft at right angles to the valve seat, and therefore a true surface could not be produced. I found that the disk cutter would not clear itself of the filings. I also found it impracticable to get sufficient pressure on the tool without throwing it off its center. My present invention was designed to overcome these defects, and it consists of the construction hereinafter described, and particularly pointed out in the claims. * * * The cutter, F, is of a special construction. It is in shape like the frustum of an oblong pyramid. The lower surface, f', has a file finish with diagonal grooving, and its inclined surfaces, f'', are also files with diagonal grooves. This constitutes a flat and a conical file in one piece, both of which are self-clearing. The flat file face adapts the cutter to dress the horizontal valve seats, and the conical file face to the conical valve seats. In virtue of its oblong shape, and the diagonal grooving of the file surfaces, it is self-clearing. It does not clog with the filings. * * * It will be understood that, instead of making the cutter with both the flat and the inclined file surfaces, separate cutters may be used for the two classes of seats, cutters with oblong flat file surfaces for dressing flat valve seats, and oblong cutters with inclined file surfaces for the ball valve seats. The material point is that the file surfaces on the cutter be not continuous. There must be clearing spaces between them. The cutter may take any form having a broken periphery, as, for example, a star or a cross, but a continuous surface will not clear itself."

Devices for reseating valves of the general character of that described in this patent were old when the application for this patent was made. They are shown by the following letters patent: No. 170,363, dated November 23, 1875, to Charles F. Hall; No. 278,478, dated May 29, 1883, to Pliny J. Wright and Samuel Rust; No. 352,591, dated November 16, 1886, to Harvey R. Tower; No. 371,321, dated October 11, 1887, to George W. Hollingsworth; and No. 379,-351, dated March 13, 1888, to Charles P. Weiss. These letters patent, and the specification of the patent in suit, which states that Wright had formerly used a disk-shaped cutter on the end of a revoluble tool shaft to reseat valves, conclusively show that there was nothing new in "the combination, with a revoluble shaft, of a

file connected to the lower end of said shaft at right angles to its axis," described in the first claim of this patent. The only novelty there could be in the combination described in that claim consisted in the shape of the file. The claim declares that the file shall be "of a size to cover at any one time only a part of the surface to be dressed, whereby the file is rendered self-clearing, substantially as described." The specification says: "The material point is that the file surfaces on the cutter be not continuous. There must be clearing spaces between them. The cutter may take any form having a broken periphery, as, for example, a star or a cross, but a continuous surface will not clear itself." Was there any patentable novelty in 1888, when the application for this patent was filed, in substituting a rotating file, with a broken periphery, for one, the surface of which was continuous, for the purpose of reseating valves? The sole function of the file, in a machine for reseating valves, is to dress down horizontal or conical valve seats, and to render them true, so that the valves will exactly fit them. These valve seats are annular in form, and the work of dressing them down, which the file or cutter performs, is not dissimilar to that performed by any rotating file or cutter used to cut and remove solid substances. It was no discovery of Wright that a continuous file surface or a continuous cutting surface on a tool used for this purpose would clog it, cause it to chatter, and would delay and derange its work. Nor was the remedy for this evil—the use of a broken periphery or of a broken cutting surface—his discovery or invention. In the specification to letters patent No. 66,354, issued July 2, 1867, to H. N. Keables, for an improvement in gear cutters, we find the following description of this evil, and the device to remedy it:

"As cutters have heretofore been made, the cutting teeth, A, have followed each other in regular order, and at equal distances apart; and those who are acquainted with, or skilled in, the art of gear cutting, know that oftentimes the chips so clog up and crowd in between the cutting teeth and the sides of the cogs on the blank being cut as to injure the work, and often to such an extent as to derange the whole operation. In a large class of work it is very important to have the sides of the cogs cut with great precision and evenness, and it is a great source of annoyance and expense to have the work injured by the clogging or 'chattering' of the cutters. To remedy the foregoing and other objections to the old style of cutters is the object of my present invention, and which consists in leaving a clearing space, a, at regular and equal distances apart, and which distance I have found to produce the best results if arranged so as to occur after two teeth, as shown in Fig. 1. It might occur after three or more teeth, but I prefer two teeth. The result is that the cutter always runs smooth and easy, doing its work even and true, and never clogging up. The same principle could be applied with good effect to 'side' or 'slabbing' cutters, as they are called. With my cutter there is no chattering, and the work is unequaled, besides it requires less power to drive the cutter than it does to drive one of the same size made according to the old plan. The mode of using the cutter is the same as that in common use, the cutter being placed upon a revolving arbor, spindle, or similar device."

In the specification to letters patent No. 93,119, issued July 27, 1869, to A. J. Prescott, for an improved reamer, the inventor says:

"The nature of my invention consists in the construction of a reamer which is provided with grooved sides, and is so formed that it will not chatter while

at work. * * * Upon the bottom of the ball there are two beveled edges, one of which is notched, while the other is smooth. The notched edge, c, does the cutting, while the smooth one, d, serves to steady the reamer, and keeps it from chattering while at work, and also smooths the work, and keeps the dirt off of the seat. Two of the sides, e, are concave, so as to allow the chips, dirt, etc., to escape without being carried around with the ball as it turns."

In view of these clear descriptions of the device of a broken file surface or periphery to remedy the clogging that results from the use of a rotary cutter that has a continuous cutting surface, it is difficult to perceive how the exercise of the inventive faculty was required to break the periphery of the disk-shaped file or cutter in common use in valve-reseating tools, and to make this file in the form of a star, a cross, the frustum of an oblong pyramid, or in any other form in which the file surface would not be continuous, and in which the file would not clog or chatter, but would clear itself when in action. This was all that Wright did. It is all that he claims to have done. Given a disk-shaped file with a continuous cutting surface that clogs and chatters in action, and the plain statements and illustrations of the specifications and drawings of the patents to Keables and Prescott, which declare that the remedy for that evil is in a broken cutting surface, and the problem Wright claims to have solved becomes so simple that one who is not a mechanic could hardly fail to perceive that the evil would be remedied by cutting off the sides of the disk. This was all that Wright did. In our opinion, the conception and production of such a device, in view of the state of the art at the time of its production, to which we have referred, did not rise above the ordinary work of a mechanic skilled in the art. Because of its want of novelty, the first claim of the patent in suit cannot be sustained. Stirrat v. Manufacturing Co., 10 C. C. A. 216, 220, 61 Fed. 980; Atlantic Works v. Brady, 107 U. S. 192, 199, 2 Sup. Ct. 225; Vinton v. Hamilton, 104 U. S. 485, 491; Slawson v. Railroad Co., 107 U. S. 649, 653, 2 Sup. Ct. 663; King v. Gallun, 109 U. S. 99, 3 Sup. Ct. 85; Double-Pointed Tack Co. v. Two Rivers Manuf'g Co., 109 U. S. 117, 3 Sup. Ct. 105; Estey v. Burdett, 109 U. S. 633, 3 Sup. Ct. 531; Bussey v. Manufacturing Co., 110 U. S. 131, 4 Sup. Ct. 38; Phillips v. City of Detroit, 111 U. S. 604, 4 Sup. Ct. 580; Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717; Ellbert v. Gaslight Co., 50 Fed. 205, 211. The decree below must accordingly be affirmed, and it is so ordered.