MONROE v. McGREER.

(Circuit Court, S. D. Iowa. E. D. August 14, 1897.)

No. 199.

1. PATENTS—INTERPRETATION—SPECIFICATIONS AND CLAIMS.
　　The claims, and not the specifications, are the measure of the patentee's rights. The specifications may be consulted to explain or restrict the claims, but not to expand them.
2. SAME—WELL-BORING APPARATUS.
　　The Monroe patent, No. 481,636, for an improvement in well-boring apparatus, construed, and held not infringed as to its second claim.

This was a suit in equity by Daniel L. Monroe against John McGreer for alleged infringement of a patent for a well-boring apparatus. On final hearing.

John E. Craig and J. Ralph Orwig, for plaintiff.
Casey & Stewart, for defendant.

WOOLSON, District Judge. Plaintiff is the patentee and owner of letters patent No. 481,636, for improvement in well-boring apparatus, granted August 30, 1892. The charge herein against defendant is based upon infringement of the second claim of such letters. The defense interposed denies that plaintiff first invented the well-boring apparatus claimed in his letters patent; alleges that said apparatus had been in public use by sundry persons for more than two years prior to plaintiff's application for said letters, and names the said persons and places; denies that the said alleged invention covered by letters patent was an invention; denies defendant infringed said letters patent; and specific denial is also made as to particular allegations on various points contained in the bill.

Evidence has been taken and filed by both parties on the various points in issue, particularly as to the alleged prior public use, etc., of said apparatus by the persons named in the answer and amendments thereto. I do not deem it necessary to enter upon the consideration of this evidence as to prior public use, and the rights of the parties thereunder, as, in my judgment, the case must be decided on the letters patent and the evidence as to the tools or apparatus

used by defendant. Upon this last-named branch of the evidence there is no dispute. Counsel for plaintiff and defendant, in their briefs submitted, agree as to what this evidence proves. In the specifications and drawings plaintiff describes and illustrates what he therein terms "auger stems, or extension stems." The auger has, at "the outer end of its stem," an eye. The "auger stems, or extension stems,"—hereinafter the latter term will be used,—are straight rods, which have at one end an eye and at the other end a hook. The extension stem is connected with the main auger stem by means of this hook engaging in and through the eye at the outer end of the stem upon the auger. A second extension stem may be connected with the first, in the same manner, viz. by its hook engaging in and through the eye on the end of first extension stem; and this process of lengthening may be continued from extension stem to extension stem, as far as practicable. Perhaps the clearest description I can present, in the absence of the drawings, is contained in the specifications, which are here stated (dropping out the figures, which are used to more particularly specify parts designated in the drawings by figures):

"The auger ends, or extension stems, are provided at opposite ends with eyes and hooks, whereby they may be readily connected. The hooks may be turned in an inward direction, as shown in Fig. 5, or in an outward direction, as shown in Figs. 1 and 4. By either of these forms the stems may be connected with each other and with the main auger stem in a very rapid and efficient manner, and they are absolutely prevented from being uncoupled while in use, inasmuch as, in order to uncouple, they must be brought to a position nearly at right angles to each other. The preferable construction embodied in this invention, which most efficiently attains this end, is that shown in Fig. 4 of the drawings, in which the hooks comprise a right-angled portion, at right angles to the stem, and passing through the eyes, and with a straight-end portion, projecting beyond the eye, and in line with the main auger stem, and said supplemental [extension] stem, thereby securing a firm and nondetachable coupling, except by manipulating the supplemental stem, as described."

By referring to the drawings it is seen that the "Fig. 5" referred to in these specifications is a straight rod, having at one end an eye, and at the other end a hook. The form of the hook is that which would be produced had an eye been opened out by the insertion of a piece of iron therein, and pressing out thereby of the end of the eye, until the end is at a sufficient distance from the rod to become a hook instead of an eye. In the drawing the hook begins directly from and on a line with the rod, instead of being first turned back from the line of the rod, before it is turned into the round form of the eye. Except for this comparatively or quite immaterial difference, the form of the hook above described is that shown as Fig. 5 of the drawing. The proof shows that defendant did use, as a part of his well-boring apparatus, this form of an extension stem and hook, and that for such use he had no assignment, license, or other permission from or under plaintiff. Under the proof, if this extension stem and its hook (Fig. 5 of drawing) are protected by and included in the grant covered by plaintiff's letters patent, then defendant is guilty of having infringed such patent.

By referring to the specifications (the part above quoted), it will be readily noticed that the form of the hook therein described as part of Fig. 4 varies materially from that in Fig. 5. The rod stem (straight

rod) and eye are the same in both figures.    The hook in Fig. 4 takes a right-angled turn from the direction of the rod stem, and pursues this new (right-angled) direction sufficiently far to enable this turn to pass through the eye with which it may be connected; then the rod (or, rather, hook) turns again at right angles, and the rod (or hook, as it is here called) proceeds, parallel with the rod stem, and also parallel with the rod stem of the eye with which it is connected, and alongside of this latter rod stem.    That is, this hook does not, in its second right-angle turn, return alongside and parallel with its own rod stem, in a direction backward along such stem, but, instead, passes in a direction away from such rod stem.    So that the last part of said hook presents, as to the rod of which it is a part, substantially the same position as does a bayonet to the musket or rifle on which it has been "fixed."    In that part above quoted of the specifications the substantial difference in form is recognized between these two styles or forms of hooks, viz. Figs. 4 and 5.    If plaintiff's rights herein are to be measured and determined by his specifications, then the "extension stem" and its hook, as used by defendant, would be included in plaintiff's patent.    But the claims as stated in the letters patent, and not the specifications therein stated, are the measure of plaintiff's rights under his letters.    The specifications may be consulted with a view to explaining or restricting, but can never expand, the claims made in the letters.    Circuit Judge Sanborn, speaking for the circuit court of appeals for this circuit, in Stirrat v. Manufacturing Co., 10 C. C. A. 216, 220, 61 Fed. 980, 984, has expressed this point with great clearness:

"The claim for a specific combination or device in a patent is a renunciation of every claim to any other combinations or devices for performing the same functions that are apparent on the face of the patent, and are not colorable evasions of the combination or device claimed.    The statute requires the inventor to 'particularly point out, and distinctly claim, the part, improvement, or combination which he claims as his discovery.'    Rev. St. § 4888.    When, under this statute, the inventor has done this, he has thereby disclaimed and dedicated to the public all other improvements and combinations, apparent from his specifications and claims, that are not evasions of the device and combination he claims as his own.    The claims of his patent limit his exclusive privileges, and his specifications may be referred to to explain and to restrict, but never to expand, them."

The second claim in plaintiff's letters patent is the only claim which defendant is charged to have infringed.    This claim, so far as this suit is concerned, "limits plaintiff's exclusive privileges."    Upon a careful reading it will be noticed that no claim is therein made for "a boring apparatus" in which the extension stem has a hook similar to that shown in Fig. 5 of the drawings accompanying the letters patent, and to the description of the hook in Fig. 5, as given in the above-quoted specifications; that is, of the hook which, in the specifications, is spoken of as being "turned in an inward direction," and which has been above compared to an eye forced partially open, so that the point or end of the iron is forced back from the stem until the eye assumes the general form of a hook, rather than an eye.    The only form of hook named in this second claim is that which appears in the drawings accompanying the patent as No. 4, and is described

as such in the specifications. The description of this hook (No. 4), as given ·in the specifications, is quoted above. By comparing the language of this second claim with the description of hook No. 4 as contained in the specifications, it will be noticed that substantially the same phraseology contained in the specifications as to this hook (No. 4) is reproduced in the claim as constituting the hook "which plaintiff claims as his discovery," except that the figures used in the specifications as referring to parts of drawings exhibited are omitted from the claim. Here is the claim as to hook:

"(2) In a boring apparatus, * * * the extension stem or stems provided with outwardly or offstanding hooks adapted to detachably engage said eyes, said hooks comprising a righ·-angled portion at right angles to the stem and passing through said eyes, and a straight-end portion, projecting beyond the eyes, and in line with both stems, substantially as set forth."

By this claim plaintiff's rights are limited and determined. Why the claim was restricted to a description of hook "No. 4" does not appear. The file wrappers are not in evidence. Whether any claim was attempted as to hook "No. 5," and rejected at the patent office, and whether the omission of such claim was accidental or deliberate, does not appear. For this suit it suffices that no claim is made in plaintiff's letters patent for the form of hook which was used by defendant in his well-boring apparatus. The hooks used on defendant's apparatus do not fall within the description contained in the second claim of plaintiff's letters patent. Defendant, so far as shown by the proof, committed no infringement of plaintiff's letters patent. The equities herein are on this point found to be with defendant, and it becomes, therefore, immaterial whether the proof sustains the other points of defense. Let decree· be entered herein dismissing the bill at plaintiff's costs, to all of which plaintiff duly excepts.