ÆOLIAN CO. v. WANAMAKER et al.

(District Court, D. Connecticut. March 17, 1915.)

No. 1392.

1. PATENTS ⚖══328—INVENTION—IMPROVEMENT IN PIANOS.

 The Votey patent, No. 780,078, for an improvement in pianos, which consists essentially of a pneumatic player attachment for grand pianos, *held* void for lack of invention, in view of the prior art.

2. PATENTS ⚖══27—"PATENTABLE INVENTION"—TRANSFER OF DEVICE TO ANALOGOUS ART.

 The transfer of a device well known in one art to an analogous art, where it performs the same function, does not constitute "patentable invention."

 [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. ⚖══27.

 For other definitions, see Words and Phrases, First and Second Series, Invention.]

In Equity. Suit by the Æolian Company against John Wanamaker and another. On final hearing. Decree for defendants.

George D. Beattys, of New York City, and George D. Seymour, of New Haven, Conn., for plaintiff.

Frederick P. Fish, of Boston, Mass., and John P. Bartlett and Robert C. Mitchell, both of New York City, for defendants.

THOMAS, District Judge. This case arises upon a bill in equity praying for an injunction and an account of profits and damages for the infringement of letters patent of the United States, No. 780,078, granted to the plaintiff, as assignee of Edwin S. Votey, for certain new and useful improvements in pianos. The defendants have answered, denying the validity of the patent, and further denying infringement of any valid patent of the plaintiff. Evidence has been taken by the parties, and the case has been heard at final hearing upon the pleadings and proofs.

[1] The subject-matter of the patent, as stated in the specification, relates more particularly to combined pneumatic and manually operated grand pianos, and the specification goes on to state that the objects of the invention are:

"To enable a grand piano to be played by pneumatic apparatus and devices incorporated in the construction of the piano, while at the same time affording provision for playing the piano manually, if desired, without removing or altering any of the pneumatic playing devices. Another object of the invention is to construct the playing apparatus as a permanent part of the grand piano, without altering to any great degree the general form of the construction, so that the instrument as a whole forms a complete pneumatic and manually operated grand piano, pleasing in appearance, readily controlled, easily interchanged, and efficient in operation. Further objects of the invention will hereinafter appear; and to these ends the invention consists of a combined pneumatic and manually-operated grand piano for carrying out the above objects embodying the features of construction, combinations of elements, and arrangement of parts, having the general mode of operation substantially as hereinafter fully described and claimed in this specification and shown in the accompanying drawings."

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is conceded that the pneumatic playing devices were old and in use in every respect prior to the date of the alleged invention, in connection with upright pianos. The plaintiff is a manufacturer of both pianos and player apparatus thereof. The defendant Wanamaker is a vendor only of the alleged infringing devices, the player mechanisms for which are made, assembled, and installed by the defendant the Wilcox & White Company, which is not itself a manufacturer of pianos, and which is the real defendant in the case.

The patent in suit contains 63 claims, but the charge of infringement is restricted to claims 1, 2, 4, 13, 16, 17, 19, 28 to 31, 40 to 51, 53 to 57, and 60 to 63. The arguments of counsel at the final hearing and the briefs submitted bring the issue to one of patentability exclusively, for, if the patent is valid, it is, without any question, infringed.

The claims are ingeniously drawn, and are a multiplication of the permutations of all the possible combinations of the parts or elements forming the alleged combinations. In the view of the case taken by the court, it is unnecessary to analyze, classify, or differentiate these claims. Briefly, the patentee has sought to monopolize in every possible way, in grand pianos, the placing of player mechanisms, which were old in upright pianos, although a careful reading of the patent and its accompanying drawings suggests very grave doubt whether there is sufficient information contained therein to enable one to build an operative grand piano with a piano player attachment; but, be that as it may, the case can be rested on the sole question: Did this placing of old mechanism require any new mechanism, or involve any new mode of operation or new function, or accomplish any new result? If it did, there *may* be a patentable invention; if it did not, the changes made by the patentee are a mere carrying forward of an old process to perform an analogous or "double" use, and not patentable.

Any broad and comprehensive definition applicable to all cases, distinguishing invention from "double use" or "mechanical skill," must have its faults and is perilous, for the line can never be drawn in advance of the case presented. Each case is necessarily sui generis. The substantial question is: What did the patentee do? It is to be noticed that there is no attempt, in the specification of the patent in suit, to describe the player mechanism with which it is concerned. The patentee, in his specification, simply contents himself with diagramatic descriptions of the location in a grand piano of the several groups or devices which compose the player mechanism, and which, prior to the alleged invention of the patentee, were divided into three general groups of devices located in or under upright pianos: (1) Power mechanism; (2) action mechanism; and (3) note-selecting mechanism. The functions of these mechanisms are not in any way changed or enlarged in the specification of the patent in suit; neither is their mode of operation, and there is no change in the result. Theodore P. Brown, of Worcester, had, as early as 1896, accomplished the same result in upright pianos which is disclosed in his patents, Nos. 581,390, 584,492, and 594,981, and which prior use and patents antedated by a considerable time the date of the application for the patent in suit. The Kuster patent, No. 640,922, and Parker's player grand, No. 587,270, each of

which also antedates the alleged invention, both show in one way or another these prior elements united for successfully combined action in upright pianos.

The same is true of other prior patents relied upon by the defendants, noticeably the Pain patent, No. 412,657; the Wells patent, No. 462,460; the Hedgeland patent, No. 595,710; the Pain patent, No. 726,981; the Bessier patent, No. 729,260; the Danquard patent, No. 766,601; and the Smith British patent of 1879, No. 4,348. The prior art, as disclosed in the defendant's evidence, shows conclusively, first, that mechanical player pianos are old; second, that music roll mechanism, including the tracker-board and music roll mechanism, was located within upright piano player cases above the keys, and back of the front panel, a considerable time prior to the patent in suit; third, that the location and function of the expression controlling levers, as claimed by the patentee, is old; fourth, that the location of the tracker-board and music roll mechanism above or below the keys in pianos generally, without specifying either upright or grand, as is particularly shown in the Smith British patent of 1879, was old and disclosed equivalency.

Furthermore, the prior art discloses that, for a considerable time prior to the invention of the patent in suit, upright piano cases were enlarged and extended without alteration of their general appearance, and their keys elongated to accommodate the location of rolls and tracker-boards above the keys, and in the case of some manufacturers, at least, grand piano cases had been provided with space to accommodate the player mechanism above the keys and behind the front board of the panel of the piano.

The court is bound to take judicial notice of the fact that a principal reason why these attachments had not been previously used with grand pianos was that the cost of the grand piano was, in itself, much greater than an upright, that the experimental work with automatic players naturally began with the cheaper pianos, and that the prejudices against mechanical piano playing were deeper seated and more lingering with grand piano makers and users, so that the tendency was naturally to advance along the lines of upright player pianos rather than of the grand player pianos. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200; Terhune v. Phillips, 99 U. S. 592, 25 L. Ed. 293; Phillips v. Detroit, 111 U. S. 604, 4 Sup. Ct. 580, 28 L. Ed. 532; Black Diamond Coal Mining Co. v. Excelsior Coal Co., 156 U. S. 611, 15 Sup. Ct. 482, 39 L. Ed. 553.

Whatever alterations there were in the upper front portion of a grand piano to facilitate the application of a playing apparatus were obvious and purely mechanical, and involved nothing more than the exercise of what any skilled mechanic or designer could and would naturally do.

[2] This analysis of the prior art forces the conclusion that the new use contemplated by the patentee was so nearly analogous to the former one that the applicability of the devices to their new use did not involve the exercise of the creative mind, and was not patentably novel, within the meaning of the patent law. Authorities may be cited at length to sustain this position.

Brill v. Washington Railway & Electric Co., 215 U. S. 527, 30 Sup. Ct. 177, 54 L. Ed. 311 (1910), is the most recent authoritative exposition of this rule by the Supreme Court. It was there held that devices used in connection with steam railway cars are not patentable as new inventions when applied to street railway cars, even though a long time had elapsed between their first use and their application to street cars. The opinion of the court, delivered by Mr. Justice Holmes, is a statement and application of the principle applied in Pennsylvania Railroad v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222, where it was held that the combination with a locomotive engine of a truck of which the kingbolt forming the connection to hold the truck to the engine passed through a bolster and an elongated opening in the plate or platform of the truck, so as to allow the truck to have a lateral motion beneath the bolster, did not constitute invention, inasmuch as the same kind of trucks had been before that combined with railway cars for the same purpose.

Other leading cases directly in point, are Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Stephenson v. Brooklyn Railroad Co., 114 U. S. 149, 5 Sup. Ct. 777, 29 L. Ed. 58; Aron v. Manhattan Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, 33 L. Ed. 272; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Capital Sheet Metal Co. v. Kinnear & Gager Co., 87 Fed. 333, 336, 31 C. C. A. 3; Bates Machine Co. v. Excelsior Heater Co., 89 Fed. 498, 504, 32 C. C. A. 267; J. H. Sager Co. v. Emil Grossman Co., 203 Fed. 996, 998, 122 C. C. A. 296. In all of these cases there was simply a mere change in location, without change of function or mode of operation, and in each case it was held that there was no invention.

In reaching this conclusion I am not unmindful of the legal presumption arising from the grant of letters patent and the law with reference thereto as laid down in many cases cited by the plaintiff. Nor have I overlooked the rule as to the burden of proof concerning prior knowledge and use, enunciated by the Supreme Court in Deering v. Winona Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153, and which is clearly stated by Judge Coxe in Young v. Wolfe (C. C.) 120 Fed. 956, 959. From a careful examination of the evidence and the prior patents, I find that the defendants have complied with this rule, and have established the facts beyond a reasonable doubt.

The bill of complaint may be dismissed. Let a decree to that effect be entered.